# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| GREGORY CARL MORSE | § | |
| | § | Civil Action No. 4:16-CV-279 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| DITECH FINANCIAL, LLC, DITECH | § | |
| FINANCIAL, LLC, NA | § | |

## MEMORANDUM ADOPTING REPORT AND
## <u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 10, 2017, the report of the Magistrate Judge (Dkt. #127) was entered containing proposed findings of fact and recommendations that Ditech's Motion for Summary Judgment (Dkt. #86) be **GRANTED** and that Plaintiff's Partial Motion for Summary Judgment (Dkt. #104) be **DENIED**. The Court further recommended that Plaintiff's Motion to Strike (Dkt. #111) be **DENIED**, and that each of Ditech's Motions for Protective Order (Dkts. #80, 120), and Plaintiff's Motion to Compel (Dkt. #112) and Motion for Leave (Dkt. #123) be **DENIED AS MOOT**. Having received the report of the Magistrate Judge (Dkt. #127), having considered each of Plaintiff's timely filed objections (Dkt. #130), Ditech's Response (Dkt. #133), Plaintiff's Reply (Dkt. #135), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the Court hereby adopts the Magistrate Judge's report (Dkt. #127) as the findings and conclusions of the Court.

## BACKGROUND

The Magistrate Judge set forth the factual background in detail in the Report and Recommendation (Dkt. #127); notwithstanding, the Court again details the factual background herein to assist in addressing Plaintiff's Objections. On April 29, 2016, Plaintiff filed his Original Complaint (Dkt. #1) against Defendant Ditech Financial, LLC and Ditech Financial, LLC, NA ("Ditech") wherein he alleged that Ditech violated various provisions of the Texas Property Code, the Texas Debt Collection Practices Act ("TDCA"), the Texas Business and Commerce Code, the Texas Civil Practice and Remedies Code, and the Fair Debt Collection Act ("FDCA"), in servicing a loan secured by his residence located at 223 High Point Murphy, Texas, 75094 (the "Property"), and instituting "an illegal foreclosure" thereon. To date, Plaintiff has filed four lawsuits in relation to these or similar allegations. *See Morse v. Stanley*, No. 4:11-cv-230, 2012 WL 1014996 (E.D. Tex. Mar. 23, 2012) ("First Lawsuit"); *Morse v. Commonwealth Land Title Ins. Co.*, No. 4:12-cv-375, 2013 WL 5372395 (E.D. Tex. Sept. 24, 2013) ("Second Lawsuit"); *Morse v. Ditech Financial LLC, et al.*, No. 4:16-cv-279 ("Third Lawsuit"); *Morse v. Ditech Financial LLC, et al.*, No. 4:16-cv-346 ("Fourth Lawsuit"). The instant action is the consolidation of the Third and Fourth Lawsuits.

### I.      *Plaintiff's Previous Lawsuits*

On March 3, 2008, Plaintiff entered into a loan refinancing agreement by executing a 30-year Note and Deed of Trust (collectively the "Loan") (Dkt. #55, Exs. A-B; *see also* Dkt. #49, Ex. 397). The Loan lists Homecomings as the lender and MERS, Inc. ("MERS") as the nominee for Homecomings and Homecomings's "successors and assigns." The 30-year Note is secured by the Property (Dkt. #55, Exs. A-B). Plaintiff admitted that he "stopped paying on the Promissory

Note" in 2011[1] (Second Lawsuit, 4:12-cv-230, Dkt. #19 at 26; Dkt. #50 at 10). On April 26, 2011, Plaintiff filed the First Lawsuit in federal court in the Eastern District of Texas. In the First Lawsuit, Plaintiff alleged that Homecomings Financial, L.L.C., Homecomings Wholesale Funding, GMAC Mortgage Corporation, LLC ("GMAC"), MERS, Merscorp, and Federal National Mortgage Association f/k/a Fannie Mae ("Fannie Mae") were liable for: "(1) common-law fraud; (2) fraud under Tex. Bus. & Com. Code §§ 27.01(b) and (e); (3) breach of contract; (4) violation of the Texas Mortgage Broker License Act; (5) violation of the Texas Mortgage Banker Registration and Residential Mortgage Loan Originator License Act; and (6) other claims under [the Real Estate Settlement Procedures Act ("RESPA")] or [violations of the Truth in Lending Act ("TILA")]." 2012 WL 1014996, at *1. "Plaintiff allege[d] that he did not receive all of the required documents upon closing….that not all fees…were actually paid….that he has performed all obligations required under the Note….[and] that he is unsure who presently owns the benefits of his mortgage debt obligation." *Id*. Plaintiff specifically alleged that he was entitled to relief under both TILA and RESPA because the defendants "fraudulently induc[ed] him to refinance his mortgages, by failing to provide required disclosures concerning the refinancing loan" *Id*. at *2-4. The court dismissed these claims with prejudice as time-barred. *Id.* at *3-4. Because the only remaining claims were raised under state law, the court declined to exercise supplemental jurisdiction and accordingly dismissed those without prejudice. *Id.* at *4.

On May 18, 2012, Plaintiff filed the Second Lawsuit against Homecomings, Homecomings Wholesale Funding, GMAC, MERS, Merscorp, Ally Bank f/k/a GMAC Bank ("Ally"), and Fannie Mae in Texas state court. 2013 WL 5372395, at *4. Plaintiff's allegations arose "out of the

---

[1] Plaintiff cannot deny this admission in the instant case. *See, e.g.*, *In re Coastal Plains, Inc.*, 179 F.3d 197, 205-06 (5th Cir. 1999).

refinance of [the Property] in 'early 2008.'" *Id.* Plaintiff alleged claims of fraud and breach of contract and sought a declaratory judgment that: "(1) there was not a lender at the closing; (2) the lender was not Homecomings Financial; (3) no entity had a right to transfer an interest to Fannie Mae; (4) there is not a lien on the Property; (5) what entities, if any, have any interest in Plaintiff's mortgage; and (6) what entities, if any, have an interest in Plaintiff's Property." *Id.* at *5. Plaintiff added: "[a]lthough not specifically alleged due to insufficient information, Plaintiff serves notice that one or more [d]efendants may have violated both State and Federal banking, finance, fraud, and racketeering statutes." *Id.* The court dismissed with prejudice: Plaintiff's declaratory relief against Homecomings, GMAC, MERS, Merscorp, Ally, and Fannie Mae, Plaintiff's quiet title, common-law fraud, DTPA, statutory fraud, RICO, breach of contract, and "other" unidentified claims against MERS, Merscorp, Ally, and Fannie Mae. Further, the court stayed[2] resolution of all other claims Plaintiff asserted against Homecomings and GMAC pending resolution of bankruptcy proceedings involving those defendants. On October 8, 2012, during the Second Lawsuit, MERS assigned the Deed of Trust to GMAC, and on May 17, 2013, the Deed of Trust transferred to Green Tree Servicing, LLC ("Green Tree") (Dkt. #49, Ex. 37; Dkt. #55, Ex. C). On August 31, 2015, Green Tree and Ditech Mortgage Corp. merged to form Ditech (Dkt. #49 at 3; Dkt. #55, Ex. D). In his current Amended Complaint, Plaintiff asserts that as these assignments never were recorded, each broke the Property's chain of title and is invalid (Dkt. #49 at 10-12).

## II.   *Instant Lawsuit*

Plaintiff's Amended Complaint alleges that on March 31, 2016, Ditech began foreclosure proceedings on the Loan by filing "a Removal of Trustee and Appointment of Substitute Trustee on behalf of the mortgage beneficiary, [MERS], thereby illegally removing the Trustee from the

---

[2] To date, these claims are still stayed. *See generally* Second Lawsuit, Eastern District of Texas Case No. 4:12-cv-375.

Deed of Trust and illegally assign[ing] Substitute Trustees and Successor Substitute Trustees" (Dkt. #49 at 22-24). Plaintiff continues that on April 11, 2016, Ditech "file[d] a fraudulent Notice of Trustee's Sale with Collin County" (Dkt. #49 at 24-27). On April 11, 2016, Ditech also sent Plaintiff an acceleration letter and Notice of Trustee's Sale and Assignment of Substitute Trustee (Dkt. #49 at 24-27). On April 28, 2016, Plaintiff filed a Texas Rule of Civil Procedure 736 ("Rule 736") lawsuit to stop the foreclosure, which is the Fourth Lawsuit. When Plaintiff's Rule 736 action was unsuccessful, he filed the Third Lawsuit (Dkt. #49 at 28). On May 5, 2016, the foreclosure sale proceeded, and the Substitute Trustee's Deed was filed in Collin County on May 20, 2016 (Dkt. #49 at 30). On May 23, 2016, the Fourth Lawsuit was removed to this Court. On October 11, 2016, the Court consolidated the Fourth Lawsuit with the Third Lawsuit (Dkt. #39). On October 28, 2016, the Court ordered Plaintiff to file an amended complaint (Dkt. # 44). On November 22, 2016, Plaintiff filed his Amended Complaint[3] (Dkt. # 49). In the instant case, Plaintiff's issues focus on alleged breaks in the Property's chain of title created by Ditech and the preceding assignees of Plaintiff's Loan that, according to the Amended Complaint, "resulted in the illegal Trustee's Sale" underlying this case. Plaintiff complains of the mortgagees and servicers' actions in creating, transferring, servicing and refinancing the Loan.

In his Amended Complaint, Plaintiff alleges that Ditech: (1) violated the TDCA; (2) created a fraudulent lien in violation of Texas Civil Practice and Remedies Code section 12.02; (3) violated the FDCPA; (4) violated Texas Property Code Chapter 51; (5) violated RESPA; (6) violated RICO; (7) violated the DTPA; (8) violated Rule 736; (9) committed statutory fraud

---

[3] Plaintiff objects to the Magistrate Judge's evaluation of his Amended Complaint in its Report and Recommendation, wherein the Magistrate Judge noted that "[t]he Amended Complaint provides little clarity as to the allegations underlying Plaintiff's instant claims" (Dkt. #130 at 9). This objection is entirely irrelevant to the instant analysis and therefore, is overruled.

(Dkt. #49). Plaintiff also seeks a declaratory judgment to quiet title in the Property (Dkt. #49 at 52).

Ditech filed its Motion for Summary Judgment on May 1, 2017 (Dkt. #86). On May 15, 2017, Plaintiff filed a Response (Dkt. #91) and a Revised Response to the Motion for Summary Judgment on May 31, 2017 (Dkt. #103). On June 6, 2017, Ditech filed a Reply (Dkt. #107), which Plaintiff moved to strike on June 15, 2017 (Dkt. #111). On May 31, 2017, Plaintiff filed a Partial Motion for Summary Judgment (Dkt. #104). On June 14, 2017 Ditech filed a Response (Dkt. #110). On June 21, 2017, Plaintiff filed a Reply (Dkt. #118).

On June 15, 2017, Plaintiff also filed a Motion to Compel (Dkt. #112). On June 28, 2017, Ditech filed its First Amended Motion for Protective Order and Response to Plaintiff's Motion to Compel (Dkt. #120). On June 30, 2017, Ditech filed a Response to Plaintiff's Motion to Compel, and asserts that any motions to compel are premature because of the pending Motion for Protective Order (Dkt. #122). On June 30, 2017, Plaintiff filed a Motion for Leave to file excess pages in response to Ditech's Amended Motion for Protective Order (Dkt. #123) and on July 7, 2017, Plaintiff filed his Reply to Ditech's Response to his Motion to Compel (Dkt. #124). On July 12, 2017, Plaintiff filed his Response to Ditech's Amended Motion for Protective Order (Dkt. #126). Hereinafter, the Court refers to these motions collectively as the "Evidentiary Motions."

On August 10, 2017, the Magistrate Judge entered a Report and Recommendation (Dkt. #127) recommending that Ditech's Motion for Summary Judgment (Dkt. #86) be granted and that Plaintiff's Partial Motion for Summary Judgment (Dkt. #104) be denied. The Magistrate Judge further recommended that Plaintiff's Motion to Strike (Dkt. #111) be denied, and that each of Ditech's Motions for Protective Order (Dkts. #80; 120), and Plaintiff's Motion to Compel (Dkt. #112) and Motion for Leave (Dkt. #123) be denied as moot. On August 28, 2017, Plaintiff

filed his objections to the Magistrate Judge's Report and Recommendation (Dkt. #130). Ditech filed its Response on September 6, 2017 (Dkt. #133). Plaintiff filed a Reply[4] on September 13, 2017 (Dkt. #135).

## OBJECTIONS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3). The Magistrate Judge made the following findings and conclusions in the Report and Recommendation: (1) res judicata completely bars Plaintiff's RESPA claim because this claim is merely a restatement of the same claim Plaintiff raised in the First Lawsuit; (2) res judicata completely bars Plaintiff's RICO claim because as pleaded, it arises out of the First and Second Lawsuits' fraud claims; (3) res judicata completely bars Plaintiff's DTPA claim because as pleaded, it arises out of the First and Second Lawsuits' fraud claims; (4) res judicata completely bars Plaintiff's statutory fraud claim because as pleaded, it arises out of the First and Second Lawsuits' fraud claims; and (5) res judicata bars Plaintiff's quiet title request insofar as that claim rests on Plaintiff's fraud claims. Further, the Magistrate Judge found Plaintiff lacks standing to challenge violations of the pooling and servicing agreement ("PSA"), the validity of the Assignments, and the appointment of a substitute trustee. The Magistrate Judge also found that "any alleged failure by [Ditech] to record the assignments does not create a break in the chain of title and/or render the assignments void....In any event, the evidence demonstrates the assignments were recorded....[and] shows an unbroken chain of assignments." Therefore, Plaintiff's challenges

---

[4] Plaintiff's Reply is entitled "Sur-Reply to Defendants Defendant's Response to Plaintiff's Objection to Report and Recommendation of Magistrate Judge" (Dkt. #130). The Court construes this as Plaintiff's Reply, and notes that it does not raise any new argument or authority not already raised in Plaintiff's Objections.

to the string of assignments lacks merit. Additionally, the Magistrate Judge found that Plaintiff failed to raise a genuine issue of material fact in his claims because: (1) his RESPA and DTPA claims were time-barred; (2) there is no private cause of action under Texas Property Code Chapter 51, but even construed instead as a wrongful foreclosure claim, Plaintiff's claim falls short; (3) Plaintiff lacks a right to relief under the TDCA, the FDCPA, RICO, or Rule 736; and (4) Plaintiff failed to state a claim for statutory fraud, fraudulent lien, or quiet title. The Magistrate Judge finally found that "[t]he Court's disposition of Defendant's Motion for Summary Judgment renders moot [the Evidentiary Motions]."

Plaintiff objects to the majority of the Report and Recommendation, specifically detailing that the "basis of the objections to the report and recommendation are: (1) [a] fatally flawed Motion for Summary Judgment submitted by the Ditech Defendants; (2) Magistrate Judge has failed to enforce Plaintiff's right to discovery; (3) Magistrate Judge has mismanaged the case; (4) No Claims Preclusion because of lack of final judgment in the previous case on Defendant that Ditech Defendants claim to have privity with; (5) No Issue Preclusion because of lack of final judgment in previous case; (6) No collateral estoppel because the transactions which lead to the cause of action in this case are remote to the transactions in the previous case by actors, time, and issue remoteness; (7) No res judicata because the opinion in previous case adjudicated actions against not all of the Defendants and the opinion was never certified pursuant to 28 USC 1292(b) and Fed. R. Civ. P. 54(b); (8) Magistrate Judge has failed to look at the underlying issues for 4:11-cv-[-]230; 4:12-cv-375, 4:16-cv-346 and 4:[1]6-cv-[-]279; (9) Magistrate Judge has failed to consider the Order of the Court, In re Residential Capital LLC et al.[5] which barred the sale of any assets that were encumbered by secured and/or unsecured claims in that case; (10) Magistrate Judge failed to

---

[5] In raising *In re Residential Capital, LLC et al.*, the Court infers that Plaintiff is referring to the GMAC bankruptcy (Dkt. #49-38).

consider evidence publicly filed by Ditech Defendants demonstrating that the March 2008 mortgage contract was void due to lack of consideration; [and] (11) Magistrate Judge failed to consider evidence filed with the Securities and Exchange Commission where Ditech Financial sold all of its mortgage servicing rights in November 2015." (Dkt. #130 at 1).

At a minimum, Plaintiff does not object to the Magistrate Judge's findings that: (1) Ditech and the defendants in the First and Second Lawsuit were in privity with one another for purposes of determining res judicata; (2) Plaintiff's DTPA claims are barred by the statute of limitations; (3) Plaintiff has failed to state a claim for wrongful foreclosure because Plaintiff cannot demonstrate the Property sold for a grossly inadequate sales price; (4) Plaintiff's RICO claims fail because he does not allege or show the existence of an enterprise as defined by the RICO statutes; (5) Plaintiff's statutory fraud claims under Texas Business and Commerce Code § 27.01(b),(e) fail because a loan transaction cannot serve as the basis for a statutory fraud claim in Texas; (6) Plaintiff's declaratory action to quiet title claim fails because Plaintiff does not provide any support for the strength of his own title and instead, focuses solely on diminishing the strength of Ditech's title; (7) Plaintiff's fraudulent lien allegations fail because Plaintiff only raises allegedly fraudulent documents that qualify neither as liens, nor as claims and the record does not show that Ditech acted intentionally to cause Plaintiff harm or with knowledge concerning the purportedly fraudulent nature of any of the documents; and (8) Plaintiff has failed to demonstrate that Rule 736 applies in this case because there is no evidence of a violation of Rule 736's stay provision as the record does not show that any creditor (including Ditech) filed a Rule 736 application for expedited

foreclosure.[6, 7]  As such, the Court adopts these findings and proceeds to evaluate the remaining claims and findings in light of Plaintiff's Objections.

### *Initial Objections: The Magistrate Judge's Characterization of Summary Judgment Evidence*

Throughout his filings, Plaintiff objects to characterizations made by the Magistrate Judge of the instant case's summary judgment evidence made in the Report and Recommendation, including references to the recorded documents, prior lawsuits, and Plaintiff's claims and allegations (Dkt. # 130 at 3-15).  After reviewing each of these objections, the Court finds each is wholly irrelevant and immaterial to the pertinent analysis within the Magistrate Judge's Report and Recommendation.  None of Plaintiff's objections to the characterizations would impact the outcome recommended by the Magistrate Judge.

### *Objection 1: Ditech's Motion for Summary Judgment is "Fatally Flawed"*

Plaintiff objects that Ditech's Motion for Summary Judgment is fatally flawed because:

(1) it is not supported by affidavits from the Defendants,
(2) it contains no facts from the discovery material efforts that the Ditech Defendants received from the Plaintiff,
(3) the Magistrate Judge has refused all efforts by Plaintiff to propound discovery on Defendants, [and]
(4) the Magistrate Judge has not properly managed this case and has refused to answer the Motion of the Plaintiff to compel the Ditech Defendants to answer discovery requests or show proof as to why Plaintiff's discovery requests should not be allowed.

(Dkt. #130 at 15).  The Magistrate Judge considered these same arguments in connection with Plaintiff's Motion to Strike wherein Plaintiff argued that Ditech's Motion for Summary Judgment

---

[6] Plaintiff asserts that he has never raised a RESPA claim in the instant action (Dkt. #130 at 13, 37).  Plaintiff clarifies that by alleging that Ditech violated RESPA in his Amended Complaint, he is "making a statement of fact and is not seeking any claims under RESPA" (Dkt. #130 at 13).  Because Plaintiff either never intended to raise or has now abandoned his RESPA claim, the Court will not address the Magistrate Judge's finding that his RESPA claim is completely barred by res judicata and will adopt such finding.

[7] In its Response, Ditech includes a chart citing to the various grounds on which it seeks summary judgment, specific to each of Plaintiff's claims, and whether Plaintiff challenged these grounds in his Objections (Dkt. #133 at 2-3).The Court finds that this is an accurate depiction of the disposition of each of Plaintiff's claims.

was improper because it "lack[ed]…attachment of evidence and/or affidavits to support the Motion for Summary Judgment" (Dkt. #111 at 1). The Magistrate Judge found that Ditech's Motion for Summary Judgment "provides citation to and summary of relevant record evidence. Neither Federal Rule of Civil Procedure 56 nor the Court's Local Rules (CV-56) require more" (Dkt. #127 at 8-9). Here too the Court finds that under Federal Rule of Civil Procedure 56 and Local Rule CV-56, Ditech's Motion for Summary Judgment is adequately supported by evidence from the record and is not fatally flawed for failing to include affidavits. Under Federal Rule of Civil Procedure 56 and Local Rule CV-56, Ditech is not required to include every piece of discovery it received from Plaintiff (if any) in its Motion for Summary Judgment. If Plaintiff wished to contradict any evidence produced by Ditech in its Motion for Summary Judgment, he had the opportunity to do so in his Response.[8] Plaintiff's last two arguments as to why Ditech's Motion for Summary Judgment is "fatally flawed" (i.e. "Magistrate Judge has refused all efforts by Plaintiff to propound discovery on Defendants,…[and] has not properly managed this case and has refused to answer the Motion of the Plaintiff to compel [Ditech] to answer discovery requests or show proof as to why Plaintiff's discovery requests should not be allowed") are meritless as discussed *infra*. Furthermore, these contentions do not legitimize Plaintiff's argument that Ditech's Motion for Summary Judgment is fatally flawed. Plaintiff's objection is overruled.

---

[8] The Court reviewed 96 pages of exhibits attached to Plaintiff's Response to Ditech's Motion for Summary Judgment (Dkt. #103) and 166 pages of exhibits attached to Plaintiff's Motion for Partial Summary Judgment (Dkt. #104).

***Objections 2-3: Evidentiary Motions***

Plaintiff also disagrees with the Magistrate Judge's recommendation to moot the pending evidentiary motions: Ditech's Motion for Protective Order (Dkt. #80), Plaintiff's Motion to Compel Discovery[9] (Dkt. #112), Ditech's First Amended Motion for Protective Order and Response to Plaintiff's Motion to Compel[10] (Dkt. #120), and Plaintiff's Motion for Leave to File excess pages in response to Plaintiff's Amended Motion for Protective Order[11] (Dkt. #123). Plaintiff's objects that the Magistrate Judge failed to enforce Plaintiff's right to discovery by refusing "all efforts to propound discovery on [Ditech]" and the Magistrate Judge has failed to decide Plaintiff's Motion to Compel or "show proof as to why Plaintiff's discovery requests should not be allowed" (Dkt. #130 at 1).

After reviewing the Report and Recommendation, the Court finds that these objections are similarly meritless. Plaintiff has not been arbitrarily stripped of his right to discovery in the instant case. *See McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) (it was not error for the court to grant summary judgment without considering the nonmovant's discovery requests, where the discovery sought "was not relevant to issues before court and would not have produced facts to refute [the movant's] evidence"). Even broadly construing his pleadings, Plaintiff does not specify how the requested discovery is relevant or refutes Ditech's summary judgment evidence. The evidence Plaintiff seeks is immaterial to Ditech's Motion for Summary Judgment (Dkt #127 at 30). Plaintiff's first and second discovery requests are moot because both request

---

[9] Plaintiff seeks discovery concerning: (1)the transfer of "Mortgage Servicer rights on [the Property]" and "the true identity of the Mortgagee at the time of the . . . bankruptcy in question;" (2) whether "GMAC Mortgage, LLC" lied in a March 4, 2010 response to an alleged "Qualified Written Request" Plaintiff sent to GMAC; and (3) whether Ditech "willfully engage[d] in mortgage fraud in conspiring to create the illegal Assignment of Deed of Trust publically recorded in Collin County, Texas on May 17, 2016" (Dkt. #112).
[10] Ditech requests protection from producing the discovery requested by Plaintiff in his Motion to Compel, and future protection from similar requests from Plaintiff (Dkt. #120).
[11]Plaintiff requests leave to file an untimely response in excess of thirty (30) pages (Dkt. #123).

discovery that demonstrates the Property's chain of title is broken, even though the record clearly shows that the chain of title is unbroken and Plaintiff lacks standing to challenge these assignments (Dkt. #127 at 30). Plaintiff's third request seeks Ditech's admission that it engaged in mortgage fraud: an admission that even if made, "would not disturb the Court's conclusions with regard to the related claims" (Dkt. #127 at 30). Plaintiff's objections are overruled.

### Objections 4-8: Res Judicata

Plaintiff objects to the Magistrate Judge's finding that Plaintiff's RESPA, RICO, DTPA, statutory fraud, and other fraud claims are completely barred by res judicata and Plaintiff's quiet title claim is partially barred by res judicata. First, Plaintiff objects that because there is no final judgment in the Second Lawsuit, the Magistrate Judge incorrectly found Plaintiff's claims to be barred by res judicata. Specifically, Plaintiff asserts that the previous lawsuits did not have a final judgment because the judgment was not "certified by the District Judge pursuant to [28 U.S.C. §1292(b) and Federal Rule of Civil Procedure 54(b)]" (Dkt. #130 at 8). Plaintiff continues that the Second Lawsuit lacks a final judgment because other claims are stayed by Plaintiff's bankruptcy proceedings (Dkt. #130 at 9). Ditech responds that "finality for purposes of appeal is not the same as finality for purposes of preclusion," and the "court's dismissal with prejudice of Plaintiff's claims in the Second Lawsuit—even if not immediately appealable—should be considered final for purposes of precluding the current litigation based on the same claims because it was not avowedly tentative and Plaintiff had an adequate opportunity to brief the relevant issues" (Dkt. #133 at 8). In considering whether there was a final judgment in the First and Second Lawsuits for purposes of res judicata, the Magistrate Judge found:

> the First and Second Lawsuits resulted in dismissal with prejudice of Plaintiff's claims….The Eastern District of Texas ordered these dismissals in both the First and Second Lawsuits based on examination of the underlying facts. That the court in the Second Lawsuit has stayed Plaintiff's case against Homecomings and GMAC

because of their involvement in an ongoing bankruptcy is of no moment: the court dismissed with prejudice Plaintiff's claims as against all other defendants, including MERS, Fannie Mae, and others in privity with Defendant (with respect to the Loan), and even indicated that, once the stay has lifted, it would likely do the same with Plaintiff's claims against Homecomings and GMAC.

(Dkt. #127 at 11-12). "To be final[,] a judgment does not have to dispose of all matters involved in a proceeding." *Pye v. Dep't of Transp. of State of Ga.*, 513 F.2d 290, 292 (5th Cir. 1975) (quoting 1B Moore's Federal Practice P 0.409 at 1002). Furthermore, "[u]nder federal law, a final judgment of a federal trial court is preclusive until that judgment is modified or reversed." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 657 (S.D. Tex. 2010). "The established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision of the appeal" *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.,* 170 F.3d 1373, 1381 (Fed. Cir. 1999). The *Restatement (Second) of Judgments* recognizes:

> when res judicata is in question a judgment will ordinarily be considered final in respect to a claim (or a separable part of a claim…) if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication. Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

§ 13, cmt. b (1982); *see also* 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4433, at 94 (2d ed. 2002) ("Despite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse. All of the values served by *res judicata* are threatened or destroyed by the burdens of retrial, the potential for inconsistent results, and the occasionally bizarre problems of achieving repose and finality that may arise."). In the instant case, the Second Lawsuit dismissed with prejudice all of Plaintiff's claims after a thorough examination of the

merits. 2013 WL 5372395, at *1 ("The court has reviewed the report, the objections and responses, as well as the pleadings relevant to this motion…and finds that plaintiff has not stated any claim here and is not entitled to any of the relief he seeks"). Whether or not the parties sought certification of the Second Lawsuit does not change this conclusion. Additionally, as the Magistrate Judge found, the bankruptcy stay in the Second Lawsuit of Plaintiff's claims against Homecomings and GMAC is inconsequential because "the court dismissed with prejudice Plaintiff's claims as against all other defendants… in privity with Defendant (with respect to the Loan), and even indicated that, once the stay has lifted, it would likely do the same with Plaintiff's claims against Homecomings and GMAC." *See* 2013 WL 5372395 at *3. These arguments are meritless.

Second, Plaintiff asserts that the Magistrate Judge erred in finding res judicata barred certain claims because "the transactions which lead to the cause of action in this case are remote to the transactions in the previous case by actors, time, and issue remoteness." Plaintiff fails to support this allegation with any specific argument or evidence, and the Court finds that it is unsupported by the record. Even though Plaintiff is proceeding *pro se*, he must support his allegations with facts.

Third, Plaintiff asserts that res judicata does not apply in this case because the "non-judicial foreclosure process for which [Plaintiff] is seeking damages and relief did not fully mature until May 20, 2016, with the recording of the fraudulent Substitute Trustee's Deed of Trust in Collin County" (Dkt. #130 at 19). Plaintiff cites to "Restatement of the Law (Second) of Judgments §20(2)" and *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292, 2305 (2016)[12] as support

---

[12] In *Hellerstedt*, the Supreme Court held that "[w]hen individuals claim that a particular statute will produce serious constitutionally relevant adverse consequences before they have occurred—and when the courts doubt their likely occurrence—the factual difference that those adverse consequences *have in fact occurred* can make all the difference" and therefore, could be excepted from a res judicata bar. 136 S.Ct. at 2306. Plaintiff did not allege in the Second Lawsuit, "that a particular statute will produce serious constitutionally relevant adverse consequences before they

(Dkt. #130 at 18). Even though the instant case involves Plaintiff's allegation that Ditech is liable under Texas law for the "recording of the fraudulent Substitute Trustee's Deed of Trust in Collin County" in May 2016 after the Second Lawsuit, the propriety of Defendant's recording centers on the same arguments and issues raised and litigated in the Second Lawsuit. *See Pye v. Dep't of Transp. of State of Ga.*, 513 F.2d 290, 292 (5th Cir. 1975) (even though the federal case involved trespasses that occurred after the prior state court proceeding, the court found that the legality of the defendant's entries onto the plaintiff's land turned on the same questions already litigated in the state court, and was barred by res judicata). Plaintiff's argument in this regard is also meritless.

Fourth, Plaintiff objects that the "Magistrate Judge has failed to look at the underlying issues for 4:11-cv-[-]230; 4:12-cv-375, 4:16-cv-346 and 4:[1]6-cv-[-]279." Plaintiff argues that as a result of this oversight, the Magistrate Judge incorrectly found privity between "Ditech Financial, LLC and Ditech Financial, LLC, N.A" (Dkt. #130 at 26). The Magistrate Judge did not find privity between Ditech Financial, L.L.C. and Ditech Financial, L.L.C., N.A. because that conclusion is irrelevant to res judicata. As required for res judicata purposes, the Magistrate Judge found that Ditech was in privity with the defendants in the First and Second Lawsuits; a point that Plaintiff does not dispute in his Objections. Finally, Plaintiff argues that res judicata cannot rest on the Second Lawsuit because it "was not related to a foreclosure….[and] [P]laintiff was unaware [Ditech] was involved in his mortgage until he received the Notice of Acceleration on April 13, 2016" (Dkt. #130 at 39). The Report and Recommendation stated that:

> Beginning in March 2016, according to Plaintiff, Defendant (through counsel) initiated a foreclosure process and, among other things "illegally remov[ed] the Trustee from the Deed of Trust and illegally assign[ed] Substitute Trustees and Successor Substitute Trustees." Plaintiff's conclusion that [Defendant's conduct during the foreclosure of the Property] constitutes fraud rests largely on the

have occurred," and he does not bring the instant suit now that such serious "adverse consequences" have occurred. Accordingly, *Hellerstedt* is distinct from the instant case.

erroneous premise—rejected in the Second Lawsuit—that MERS (the nominee for the Loan) cannot have assigned (and did not assign) the Deed of Trust to GMAC, which in turn assigned it to Green Tree/Defendant.

(Dkt. #127 at 14-15). Plaintiff's fraud claims in the instant suit rely on Plaintiff's already-rejected argument "that MERS (the nominee for the Loan) cannot have assigned (and did not assign) the Deed of Trust to GMAC, which in turn assigned it to Green Tree/Defendant." Simply because the foreclosure proceedings were initiated in between the Second Lawsuit and the instant suit and Plaintiff was unaware of Ditech's future involvement in his mortgage until March 2016 does not change the fact that Plaintiff seeks to re-litigate issues he raised or could have raised in the First and Second Lawsuits. Accordingly, Plaintiff's objections are overruled.

However, even assuming *arguendo* that Plaintiff's claims are not barred by res judicata, the Court finds as the Magistrate Judge found, that these claims still should be dismissed for other reasons either unchallenged by Plaintiff in his over fifty pages of briefing or as discussed *infra*. The Court finds that under the DTPA, Plaintiff lacks standing (discussed *infra*) and is barred by the statute of limitations. Under RICO, Plaintiff failed to state a claim for relief, as discussed *infra*. Plaintiff has failed to establish a violation of Texas Business and Commerce Code § 27.01(b),(e) because Plaintiff and Defendant's relationship exists through a loan agreement and not a contract for the sale of land—therefore, Plaintiff's claim under Texas Business and Commerce Code § 27.01(b),(e) fails. Plaintiff's declaratory action to quiet title claim fails because Plaintiff fails to provide any support for the strength of his own title and instead, focuses solely on diminishing the strength of Defendant's title. Consequently, and as Ditech points out in its Response,[13] multiple grounds support summary judgment as to each claim.

---

[13] (Dkt. #133 at 2-3).

*Objection 9-10: Plaintiff's Standing to Contest Violations of the PSA, Various Assignments, and the Appointment of a Substitute Trustee*

Plaintiff spends a considerable portion of his Objections re-raising his arguments about the legality of the various assignments of the Loan (Dkt. #130 at 31-36). Plaintiff now further asserts that he has standing to raise these claims as the recorded documents are void "because there was a "lack of consideration *ab initio*" (Dkt. #130 at 32). Plaintiff alleges that had the Magistrate Judge considered the GMAC bankruptcy proceedings, it would have discovered the "material fact that the March 2008 mortgage contract under State of Texas Codes and Statu[t]es lacks consideration *ab initio*" and therefore, is void (Dkt. # 130 at 14). Ditech asserts that "Plaintiff failed to identify any ground that would render the recorded documents void, and thus Plaintiff's objection to [the Magistrate Judge's] determination that he lacks standing is without merit" (Dkt. #133 at 5). Ditech further argues that Plaintiff's unpled claim that the Deed of Trust lacks consideration does not need to be addressed as "such allegations have no bearing on Defendant's entitlement to summary judgment" (Dkt. #133 at 6-7). Ditech avers that even so, "the HUD-1 Settlement Statement…and the Deed of Trust clearly demonstrate that there was consideration for the Loan" (Dkt. #133 at 7).

The Magistrate Judge found that "Plaintiff lacks standing to assert his claims attacking the various assignments" because "[a] non-signatory to an assignment generally does not have standing to challenge the validity of an assignment contract." However, a "limited exception exists that allows a mortgagor to challenge an assignment on any ground that renders the assignment void." (Dkt. #127 at 17) (internal quotations omitted). The Magistrate Judge found that under Texas law, "any alleged failure by Defendant to record the assignments does not create a break in the chain of title and/or render the assignments void," and therefore, Plaintiff's claim that the "Chain of Title is irrevocably broken because the Assignment of Deed is not recorded" did not provide Plaintiff with standing.

Plaintiff did not raise the issue of consideration before the Magistrate Judge. "The filing of objections is not an opportunity for Plaintiff[] to reopen summary judgment evidence and present new arguments. Nor is it an opportunity to infer facts or arguments that were not actually present in the pleadings and summary judgment response." *Green v. Bank of Am., N.A.*, No. 4:13CV92, 2013 WL 6178499, at *1 (E.D. Tex. Nov. 25, 2013) (Clark, J.). Nevertheless, Plaintiff's objection to his lack of standing is unsupported by the record. "[T]he law is settled in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor." *Reinagel v. Deutsche Bank Nat. Tr. Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (internal quotations omitted). "Texas courts follow the majority rule that the obligor *may* defend on any ground which renders the assignment void." *Id.* For an assignment to be valid, it must be supported by consideration. *Eurecat US, Inc. v. Marklund*, No. 14-15-00418-CV, 2017 WL 2367545, at *16 (Tex. App.—Houston [14th Dist.] May 31, 2017, no pet.). Plaintiff's contention that the Loan was not supported by consideration is unsupported by the record (Dkts. #49-30, #104-5). The Court finds Plaintiff lacks standing to raise these claims. Accordingly, Plaintiff's objection is overruled.

### Objection 11: Plaintiff's Standing Under the FDCPA

Plaintiff avers that he has standing under the FDCPA and cites to Third Circuit authority, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 243 (3rd Cir. 2014), as support for this conclusion (Dkt. #130 at 41). Both excerpts that Plaintiff provides are wholly unrelated to whether he has standing under the FDCPA: one passage focuses on whether a plaintiff was required to validate a debt before suing and the other centers on the analysis for considering whether communication from a debt collector is made in connection with the collection of the debt (Dkt. #130 at 41). Plaintiff also cites to evidence collected from the Securities and Exchange

Commission that allegedly demonstrates "[Ditech] stated that they sold all [Ditech] mortgage servicing rights in 2015" as support for his proposition that he "had legal standing to assert [] Ditech No. 1 willfully violated FDCPA when Ditech No. 1 did not send out A 'Demand Letter'" (Dkt. #130 at 42). Ditech responds that "Plaintiff fails to specify how not sending a demand letter of conducting a foreclosure sale violates…a debt validation provision of the FDCPA," and "[n]evertheless,…the allegation pled by Plaintiff in support of his alleged FDCPA claim is that an acceleration and notice of trustee sale violated the FDCPA" (Dkt. #133 at 6). Ditech asserts that the Magistrate Judge "correctly concluded that the FDCPA claim must fail as a matter of law" because "foreclosure proceedings are not debt collection under the FDCPA" (Dkt. #133 at 6).

The Magistrate Judge found "because Plaintiff's FDCPA claims (and the evidence supporting them) center wholly on his allegations related to the foreclosure and Defendant's actions in conducting the foreclosure, Plaintiff's FDCPA claim must fail" (Dkt. #127 at 24). In reaching this conclusion, the Magistrate Judge considered Plaintiff's allegations that Ditech violated the FDCPA by sending Plaintiff an acceleration letter and Notice of Trustee's sale and pursuing a foreclosure sale despite Plaintiff's ongoing Bankruptcy (Dkt. #127 at 24-25). The Court finds that Plaintiff's objections are unfounded. Plaintiff's unrelated legal authority and convoluted arguments that Ditech sold its mortgage servicing rights in 2015 and allegedly failed to send Plaintiff a demand letter do not affect the accurate characterization of his FDCPA claims as allegations centered on the foreclosure of the Property. These arguments do not alter the obvious conclusion that Plaintiff is bringing a foreclosure action. Because the FDCPA excludes foreclosure actions, Plaintiff may not bring his foreclosure allegations under the FDCPA. *See Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 732 (N.D. Tex. 2011) (collecting cases) (the FDCPA "exclude[s] actions purely aimed at foreclosure").

Furthermore, even construing Plaintiff's claim that Ditech violated the FDCPA by failing to send Plaintiff a demand letter as a claim under the TDCA, the Court finds this argument unsuccessful.  Plaintiff argued to the Magistrate Judge that a creditor's sending an "acceleration letter and Notice of Trustee's Sale" violates the law.  (Dkt. #127 at 25).  Now, he argues that Ditech's *failure* to send such correspondence violates the law.  (Dkt. #130 at 42).  Even if failure to send a "demand letter" violates the TDCA, the record does not reflect that such actions occurred in the instant case (Dkts. #49-2, #49-3, #49-9).  Accordingly, Plaintiff's objections are overruled.

### *Objection 12: Plaintiff's Standing Under the DTPA*

Plaintiff makes the same conclusory argument that "TX BUS & COM Code §27.015 gives *Pro se* Plaintiff standing under DTPA" several times throughout his Objections (Dkt. #130 at 10, 12).  Plaintiff asserts that he "has standing as a consumer because he purchased goods and services from the Mortgagee of the March, 2008 loan on his home as shown on his HUD-1 Statement," and Plaintiff lists the goods and services he purchased as various fees and taxes (Dkt #130 at 40).  Ditech responds with a litany of Texas cases in support of the conclusion that "borrowing money does not constitute the acquisition of a good or service" under the DTPA (Dkt. #133 at 5).  Ditech further asserts that Plaintiff's argument that he paid costs incidental to the Loan does not make Plaintiff a consumer under the DTPA (Dkt. #133 at 6).  The Magistrate Judge found that "Plaintiff does not constitute a 'consumer' under that statute with respect to the Loan and Defendant's activities related thereto" (Dkt. #127 at 25, n. 6).  The Court agrees that Plaintiff is not a "consumer" under the DTPA.  "In all cases, a plaintiff must qualify as a 'consumer' in order to have standing to bring an action under the DTPA."  *Baker v. Countrywide Home Loans, Inc.*, No. CIV A 308-CV-0916-B, 2009 WL 1810336, at *6 (N.D. Tex. June 24, 2009).  "To qualify as a consumer under the DTPA, one must seek or acquire goods or services by purchase or lease." *Id*.

(citing Tex Bus. & Com. Code Ann. § 17.45(4)). "It is well recognized, however, that borrowing money does not constitute the acquisition of a good or service." *Id.*; *see also Marketic v. U.S. Bank Nat'l Assoc.,* 436 F.Supp.2d 842, 855 (N.D. Tex. 2006) ("merely obtaining a loan or an extension of credit does not qualify one as a 'consumer'")). Because Plaintiff seeks relief for alleged violations of the DTPA in connection with the Loan, Plaintiff is not a consumer under the DTPA. Accordingly, this objection is overruled.

### Objection 13: RICO Claims

Plaintiff argues that he is entitled to relief under RICO because the Assignments, mailing of pre-foreclosure notice, and foreclosure violated the Bankruptcy Code and therefore equate to racketeering (Dkt. # 130 at 44). Ditech responds that "Plaintiff fails to address how these acts constitute a pattern of racketeering or an enterprise engaged in criminal activity" (Dkt. #133 at 7). The Magistrate Judge found that Plaintiff does not establish a RICO claim because:

> he fails to allege or show the existence of an enterprise as defined by the RICO statutes. Plaintiff postulates that "Homecomings Wholesale Funding could be the RICO Enterprise used on the March 3, 2008 mortgage" and that "if Ditech Financial, LLC, National Association does not exist, it is a RICO enterprise." He then goes on to omit any reference to these purported "enterprises" in his allegations related to his RICO claims, and wholly fails to explain (or demonstrate through evidence) how Defendant interacted with or used the alleged enterprises to accomplish anything, must less anything proscribed criminally. Moreover, Plaintiff fails to show that either Homecomings Wholesale Funding or Ditech Financial, LLC, National Association operate through any hierarchal or consensual decision-making process.

(Dkt. #127 at 28-29). To state a claim under RICO, a litigant must establish: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). Under RICO, an enterprise is a group of persons or entities associated together for the shared purpose of engaging in a course of conduct. *Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229

(5th Cir. 2003) (citing 18 U.S.C. § 1961(4)). Further, the enterprise must employ "some sort of hierarchal or consensual decision-making structure, and it must exist for purposes other than just to commit predicate acts." *In re McCann*, 268 F. App'x 359, 366 (5th Cir. 2008). To establish an enterprise, Plaintiff must "plead specific facts, not mere conclusory allegations." *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988). Broadly construing Plaintiff's pleadings, the Court agrees with the Magistrate Judge: Plaintiff has wholly failed to state a claim under RICO. Accordingly, this objection is overruled.

### *Objection 14: Wrongful Foreclosure Claims*

Plaintiff raises multiple ambiguous arguments about the legal effect of the GMAC bankruptcy action and objects that the Magistrate Judge "totally ignored these facts…ignored TX PROP Code §51.016 which specifically demands that a foreclosure sale is rescinded when a bankruptcy stay is in place" (Dkt. #130 at 35). Plaintiff reiterates the same conclusory argument that he raised before the Magistrate Judge: that Ditech initiated foreclosure proceedings in violation of the GMAC bankruptcy because the Loan was excluded from the Ocwen APA, which was approved by the GMAC bankruptcy court (Dkt. #130 at 35). The Court interprets Plaintiff's grievances with the treatment of the GMAC bankruptcy action as an objection to the Magistrate Judge's analysis of his claims under Texas Property Code Chapter 51 or Rule 736 as a wrongful foreclosure claim. Defendant responds that the Magistrate Judge "addressed Plaintiff's argument…[and] correctly concluded that Plaintiff's contention as to the legal effect of the GMAC Bankruptcy and APA was without merit. Simply put, Plaintiff cannot and did not show that his loan was excluded from the APA as he alleged in his live complaint" (Dkt. #133 at 4-5) (internal citation omitted). The Magistrate Judge found:

> Texas Property Code Chapter 51 provides…no private right of action…[and] courts tend to construe such claims instead as those for wrongful foreclosure….[Plaintiff's

inability to demonstrate that the Property sold for a grossly inadequate selling price] alone defeats Plaintiff's wrongful foreclosure claim, but to the extent Plaintiff claims a defect in the foreclosure proceedings occurred, either because the asset purchase agreement approved by the bankruptcy court in the GMAC bankruptcy (the "Ocwen APA") precluded assignment of the Property or because Defendant conducted the foreclosure in violation of Rule 736, Plaintiff's claim must still be dismissed. The Ocwen APA provides property subject to the Ocwen APA, including the Property, shall transfer to the agreed purchaser "free and clear of all Claims and Liens except Permitted Liens[,]" which includes encumbrances on title to real property. The Loan in the instant case constitutes an encumbrance on the Property falling into the category of Permitted Liens under the Ocwen APA. Plaintiff's allegations that Defendant transferred or assigned the Property in violation of the bankruptcy court's determination accordingly is without merit….Plaintiff points to no provision within the Ocwen APA or to any outside authority showing the contrary.

(Dkt. #127 at 22-23). It is clearly evident that the Magistrate Judge did not "totally ignore[] these facts…ignore[] TX PROP Code §51.016" in making its recommendation. Further, the Court agrees with the Magistrate Judge's conclusion that Plaintiff's allegations that Ditech transferred or assigned the Property in violation of the bankruptcy court's determination is meritless because Ditech's assignment of the Property with Plaintiff's debt obligation still attached complies with the Ocwen APA. Reviewing his Objections and Reply, Plaintiff still does not present a provision within the Ocwen APA or any authority showing differently. This objection is overruled.

### *Miscellaneous Objections*

Plaintiff makes numerous arguments throughout his Objections and Reply that the recommendations of the Magistrate Judge are the result of the Magistrate Judge's inattention to detail, oversight of pertinent facts, and general unawareness of the applicable law. These allegations are baseless and without merit. At 32 pages in length, the Report and Recommendation thoroughly addresses Plaintiff's pleadings and demonstrates a careful consideration of Plaintiff's allegations in light of binding authority.

# CONCLUSION

Having received the report of the United States Magistrate Judge (Dkt. #127), having considered each of Plaintiff's timely filed objections (Dkt. #130), Ditech's Response (Dkt. #133), Plaintiff's Reply (Dkt. #135), and having conducted a de novo review, this Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the Magistrate Judge's report (Dkt. #127) as the findings and conclusions of the Court.

It is, therefore, **ORDERED** Ditech's Motion for Summary Judgment (Dkt. #86) is **GRANTED**, and that Plaintiff's claims against Ditech are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment Against Ditech Financial, LLC and Ditech Financial, LLC, National Association (Dkt. #104) and Plaintiff's Motion to Strike (Dkt. #111) are **DENIED**, and that each of Ditech's Motions for Protective Order (Dkts. #80, 120), and Plaintiff's Motion to Compel (Dkt. #112) and Motion for Leave (Dkt. #123) are **DENIED AS MOOT**.

**IT IS SO ORDERED**.
 **SIGNED this 25th day of September, 2017.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE